**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| JENNIE LINN MCCORMACK, *Plaintiff-Appellee*, | No. 13-35401 |
| RICHARD HEARN, M.D., on his own behalf and on behalf of his patients, *Intervenor-Plaintiff-Appellee*, | D.C. No. 4:11-cv-00433-BLW |
| v. | OPINION |
| STEPHEN F. HERZOG, Bannock County Prosecuting Attorney, *Defendant-Appellant*. | |

Appeal from the United States District Court
for the District of Idaho
B. Lynn Winmill, Chief District Judge, Presiding

Argued and Submitted
July 18, 2014—Pasadena, California

Filed May 29, 2015

Before: Harry Pregerson and Kim McLane Wardlaw,
Circuit Judges, and Donald E. Walter, Senior District
Judge.[*]

Opinion by Judge Pregerson

---

[*] The Honorable Donald E. Walter, Senior District Judge for the U.S. District Court for the Western District of Louisiana, sitting by designation.

## SUMMARY[**]

### Civil Rights

The panel affirmed the district court's summary judgment for plaintiffs in an action brought pursuant to 42 U.S.C. § 1983 challenging the Pain-Capable Unborn Child Protection Act, which regulates the performance of abortions in Idaho.

Plaintiff, Jennie McCormack, was criminally charged with violating Idaho Code § 18-606, for knowingly submitting to an abortion not authorized under the statute, or purposely self-terminating a pregnancy. After the criminal complaint was dismissed without prejudice by a state court, McCormack brought a class action in federal court against the prosecuting attorney, who subsequently offered McCormack transactional immunity from prosecution for the alleged abortion, which she declined. McCormack's attorney, Dr. Hearn, who is also a licensed physician, intervened in the action on his own behalf and on the behalf of his patients.

The panel held that McCormack's challenge to §18-606 was not moot because her claims fell under three exceptions to the mootness doctrine: (a) "voluntary cessation," (b) "collateral legal consequences," and (c) "capable of repetition, yet evading review." The panel further held that McCormack had standing based on the lingering risk of prosecution under § 18-606.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that Dr. Hearn had standing based on his intention to provide medical abortions through the second trimester outside a clinical or hospital setting and based on his possible prosecution under § 18-505 and § 18-608.

The panel held that Section 18-505, which prohibits abortions of fetuses of twenty or more weeks postfertilization, was facially unconstitutional because it categorically bans some abortions before viability. The panel further held that Section 18-608(2), which requires that all second-trimester abortions occur in a hospital, was facially unconstitutional because it places an undue burden on a woman's ability to obtain an abortion by requiring hospitalizations for all second-trimester abortions. Finally, the panel held that Section 18-608(1) (requiring, among other things, that abortions during the first trimester take place in a medical office that is properly staffed and that the responsible physician make satisfactory arrangements with an acute care hospital in care of complications or emergencies) in conjunction with § 18-605 was unconstitutionally vague.

## COUNSEL

Clay R. Smith (argued), Deputy Attorney General, and Steven L. Olsen, Chief of Civil Litigation, Attorney General's Office, Boise, Idaho for Defendant-Appellant.

Richard A. Hearn (argued), Racine, Olson, Nye, Budge & Bailey, Chartered, Pocatello, Idaho, for Plaintiff-Appellee.

Jack Van Valkenburgh, Boise, Idaho, for Intervenor-Plaintiff-Appellee.

Kathleen M. O'Sullivan and Katherine G. Galipeau, Perkins Coie LLP, Seattle, Washington, for Amici Curiae Legal Voice, Center for Reproductive Rights, National Advocates for Pregnant Women, and Planned Parenthood of the Great Northwest.

Lawrence J. Joseph, Washington, D.C., for Amicus Curiae Eagle Forum Education and Legal Defense Fund.

## OPINION

PREGERSON, Circuit Judge:

In this 42 U.S.C. § 1983 action, Stephen Herzog, the Prosecuting Attorney of Bannock County, Idaho, appeals the district court's order denying his motion for partial summary judgment and granting the joint motion for partial summary judgment in favor of appellees Jennie McCormack ("McCormack") and Dr. Richard Hearn ("Dr. Hearn").

Before the district court, Jennie McCormack claimed that Idaho Code Title 18, Chapters 5—the Pain-Capable Unborn Child Protection Act ("PUCPA")—and 6, which regulate the performance of abortions, violate various provisions of the United States Constitution. McCormack's attorney is Dr. Hearn, who is also an Idaho licensed physician who intends to provide his patients with pre-viability medical abortions. Dr. Hearn, as a third party-intervenor, *also* challenged the constitutionality of §§ 18-505 and 18-608, which fall within Chapters 5 and 6 of Idaho Code Title 18.

We have jurisdiction pursuant to 28 U.S.C. § 1291. For the reasons set forth below, we affirm.

## BACKGROUND

This case had its genesis in an Idaho state criminal prosecution when, on May 18, 2011, the then Prosecuting Attorney for Bannock County, Idaho, Mark Hiedeman,[1] filed a criminal complaint against Jennie McCormack.  The complaint charged McCormack with violating Idaho Code § 18-606,[2] for knowingly submitting to an abortion not authorized under the statute, or purposely self-terminating a pregnancy.  McCormack admitted to the police that she self-induced an abortion after ingesting a pack of five pills.[3]  A physician examined the fetus and estimated its gestational age to have been between nineteen and twenty-three weeks, "but with difficult certainty."

Then on September 7, 2011, an Idaho state judge dismissed the criminal complaint without prejudice for lack of probable cause.

---

[1] Stephen Herzog ("Herzog") succeeded Mark Hiedeman as Prosecuting Attorney on January 14, 2013, and was automatically substituted as the defendant pursuant to Fed. R. Civ. P. 25(d).

[2] Section 18-606 provides that a woman who submits to an abortion in a manner not authorized by statute, or acts as an accomplice to such an abortion, will be guilty of a felony, fined, and/or imprisoned for not less than one year, and not more than five.

[3] McCormack knew that abortions are not available in southeast Idaho, where she lived.  McCormack was aware that abortions are available in Salt Lake City, Utah, and cost between $400 and $2,000, depending on the stage of the pregnancy.  McCormack learned that medications could be used to perform abortions and that the medications were significantly less expensive than surgical abortions.  McCormack's sister allegedly found unspecified abortion pills online, paid $200 for them, and had them shipped to McCormack in Idaho.

On September 16, 2011, McCormack filed a class action in the United States District Court for the District of Idaho against the then Prosecuting Attorney Hiedeman, "seeking a determination that section 18-606, as well as other provisions of Title 18, Chapters 5 and 6 of the Idaho Code, which also regulate abortion[s], violate various provisions of the United States Constitution."

On November 14, 2011, Chief United States District Judge for the District of Idaho, B. Lynn Winmill, granted McCormack's motion for preliminary injunctive relief and enjoined then Prosecuting Attorney Hiedeman from enforcing § 18-606 (criminalizing submitting to an abortion), as interpreted together with § 18-608(1).[4] The district court, however, held that McCormack did not have standing to challenge § 18-608(2)[5] or § 18-505.[6]

On August 22, 2012, Prosecuting Attorney Hiedeman determined that he would not re-file a criminal complaint against McCormack for allegedly violating § 18-606 because he felt that it was unlikely that his office would develop additional evidence. About two months later, the Prosecuting Attorney offered McCormack transactional immunity from

---

[4] Section 18-608(1) requires a physician to perform all first trimester abortions in a "properly staffed and equipped" hospital, medical office, or clinic. The physician must also make "satisfactory arrangements with one or more acute care hospitals within reasonable proximity," in case of complications or emergencies related to the abortion.

[5] Section 18-608(2) requires all second trimester abortions to take place in a hospital.

[6] Section 18-505 categorically bans abortions of fetuses of twenty or more weeks postfertilization except in particular circumstances.

prosecution for the alleged December 2010 abortion. McCormack declined to sign the agreement.

On February 23, 2012, McCormack's attorney, Dr. Hearn, moved to intervene "on his own behalf and on the behalf of his patients." Dr. Hearn is a licensed physician as well as an attorney in Idaho, and has stated his intent to provide medical abortions by "prescrib[ing] FDA approved medications to women in Bannock County, Idaho such as McCormack who . . . seek to medically (non-surgically) terminate their pregnancies prior to fetal viability in violation of the restrictions contained in Idaho Code Title 18, Chapters 5 and 6." Medical abortions induced by pills are distinct from surgical or therapeutic abortions which usually take place in a medical clinic or a hospital. Since 1997, Dr. Hearn has continuously registered with the Federal Drug Enforcement Agency and the Idaho State Board of Pharmacy, which allows him to legally prescribe medication in Bannock County. Dr. Hearn has not provided medical abortions in the past, does not have a medical office in which to treat patients, and has practiced as a full-time attorney since 1997.

The district court granted Dr. Hearn's motion to intervene. Dr. Hearn filed an amended complaint-in-intervention that similarly challenged the constitutionality of certain provisions of Idaho Code Title 18, Chapters 5 and 6. Pursuant to 42 U.S.C. § 1983, Dr. Hearn sought to enjoin the Prosecuting Attorney from criminally prosecuting or threatening to prosecute any woman who seeks an abortion or any health provider for violating Idaho Code Title 18, Chapters 5 and 6. Dr. Hearn also sought a declaratory judgment striking down the relevant Idaho statutes' criminal sanctions as unconstitutional facially and as applied to

women seeking an abortion in Bannock County, Idaho, or any health provider who provides assistance to such women.

On September 11, 2012, we affirmed the district court's grant of a preliminary injunction that enjoined the Prosecuting Attorney from prosecuting McCormack under §§ 18-606 and 18-608(1), and expanded the injunction to include § 18-608(2) because McCormack faced a "genuine threat of prosecution under th[is] subsection of the statute." *McCormack v. Hiedeman*, 694 F.3d 1004, 1020–21 (9th Cir. 2012) (*McCormack I*).    We limited the preliminary injunction, however, to affect only McCormack (as opposed to all women affected by § 18-606), *id.* at 1019–20, and further held that McCormack lacked standing to seek pre-enforcement relief against the enforcement of PUCPA on the basis of future pregnancies, *id.* at 1022–25.

On October 16, 2012, before the district court McCormack and Dr. Hearn jointly moved for partial summary judgment to declare three Idaho statutes—§ 18-606, in conjunction with § 18-608(1) or (2); § 18-605,[7] in conjunction with § 18-608(1) or (2); and § 18-505, in conjunction with § 18-507 or § 18-508—unconstitutional, and to permanently enjoin the Prosecuting Attorney from enforcing the statutes.

On March 6, 2013, the district court granted McCormack and Dr. Hearn's joint motion for partial summary judgment

---

[7] Section 18-605 establishes civil and criminal penalties for persons who perform abortions other than as permitted by the remainder of Title 18, Chapter 6 of the Idaho Code.  In particular, § 18-605(3) states that the licensed or certified health care provider must "knowingly" violate the statute to be guilty of a felony.

and denied Prosecuting Attorney Herzog's cross-motion for partial summary judgment. On March 20, 2013, McCormack and Dr. Hearn moved to dismiss all remaining claims against Herzog and to enter a final judgment. The district court granted the motion and entered final judgment on May 2, 2013, declaring the challenged statutes unconstitutional, and enjoining Herzog from prosecuting McCormack or Dr. Hearn under the challenged statutes.

Herzog timely appeals the district court's final judgment.

## DISCUSSION

## A. This court has jurisdiction.

### 1. *Standard of Review*

"Mootness is a question of law reviewed de novo." *Siskiyou Reg'l Educ. Project v. U.S. Forest Serv.*, 565 F.3d 545, 559 (9th Cir. 2009) (quoting *Barter Fair v. Jackson County*, 372 F.3d 1128, 1133 (9th Cir. 2004)). "A case becomes moot whenever it loses its character as a present, live controversy . . . . The question is not whether the precise relief sought at the time [ the case] was filed is still available. The question is whether there can be any effective relief." *Id.* (quoting *Earth Island Inst. v. United States Forest Serv.*, 442 F.3d 1147, 1157 (9th Cir. 2006)).

Questions of standing are also reviewed de novo, but underlying factual findings are reviewed for clear error. *Preminger v. Peake*, 552 F.3d 757, 762 n.3 (9th Cir. 2008).

2.  *McCormack's challenge to § 18-606 is not moot.*

Herzog asserts that McCormack's challenge to § 18-606 is moot because the Prosecuting Attorney granted McCormack transactional immunity for the alleged 2010 abortion.

"A case might become moot if subsequent events make it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur. The heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (internal quotation marks and citation omitted). Herzog, therefore, must demonstrate that his office will never again prosecute McCormack under § 18-606, or that the court is no longer capable of "affect[ing] the rights of litigants in the case before [it]." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990) (citing *North Carolina v. Rice*, 404 U.S. 244, 246 (1971)).

Herzog's office offered McCormack transactional immunity from prosecution for her alleged 2010 abortion, which McCormack declined to accept.[8] The district court questioned the validity of the offer of transactional immunity because the timing of the offer suggests an attempt to "moot McCormack's claims and thereby avoid this litigation—and its challenge to the constitutionality of sections 18-606 and -

---

[8] Like the district court, we assume, but do not decide, that the Prosecuting Attorney's offer to not prosecute McCormack is a transactional immunity agreement.

608." The district court further determined that other factors also suggested a live controversy:

> (1) The specific relief McCormack seeks—declaratory relief that § 18-606, interpreted with §§ 18-608(1) and 18-608(2), is facially unconstitutional—is still available.

> (2) McCormack continues to assert that the provisions are unconstitutional.

> (3) Prosecuting Attorney Herzog continues to assert that the provisions are not unconstitutional.

Moreover, the district court determined that "[t]here is a significant public interest in settling the legality of these provisions, and the existence of this interest 'militates against a mootness conclusion.'" (citing *Olagues v. Russoniello*, 770 F.2d 791, 794–95 (9th Cir. 1985)).

McCormack argues that her claims are not moot because they fall under three exceptions to the mootness doctrine: (a) "voluntary cessation," (b) "collateral legal consequences," and (c) "capable of repetition, yet evading review."

(a) McCormack is correct that this case falls within the "voluntary cessation" exception. Herzog acknowledges that under the "voluntary cessation" exception, it is well-settled that "a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth*,

528 U.S. at 190. Yet Herzog argues that the court should presume that the government is acting in good faith, that the Bannock County Prosecuting Attorney office's decision against re-filing criminal charges was made in "the interests of justice," and that the office's sparse history of bringing criminal charges under § 18-606 demonstrates a lack of "biased calculus." A presumption of good faith, however, cannot overcome a court's wariness of applying mootness under "protestations of repentance and reform, especially when abandonment seems timed to anticipate suit, and there is probability of resumption." *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 n.5 (1953) (quoting *United States v. Oregon State Medical Society*, 343 U.S. 326, 333 (1952)).

Furthermore, while a statutory change "is usually enough to render a case moot," an executive action that is not governed by any clear or codified procedures cannot moot a claim. *Bell v. City of Boise*, 709 F.3d 890, 898–900 (9th Cir. 2013) (quoting *Chem. Prod. And Distrib. Ass'n v. Helliker*, 463 F.3d 871, 878 (9th Cir. 2006)). "Even assuming Defendants have no intention to alter or abandon the [offer of transactional immunity], the ease with which the [Prosecuting Attorney] could do so counsels against a finding of mootness." *Id.* at 900. The discretionary decision to not re-file criminal charges against McCormack is neither "entrenched" nor "permanent." *Id.*

In addition to the suspicious timing of the offer of transactional immunity, the district court noted that Herzog has "never repudiated the statute as unconstitutional, and he did not cease McCormack's prosecution because he believed the prosecution was unlawful." Instead, Herzog's office first determined that it had insufficient evidence to re-file criminal charges against McCormack. Then, Herzog's office offered

McCormack transactional immunity from prosecution after our court affirmed the district court's decision that the Idaho statutes imposed an undue burden on a woman's ability to terminate her pregnancy. The offer of immunity does not by itself make it "absolutely clear" that the prosecution of McCormack would never recur. *Friends of the Earth*, 528 U.S. at 170; s*ee also Olagues*, 770 F.2d at 795 (finding a continuing case or controversy where the government "did not voluntarily cease the challenged activity because [it] felt that the investigation was improper[, but, r]ather, [the government] terminated the investigation solely because it failed to produce evidence supporting any further investigative activities.").

(b) The "collateral legal consequences" exception also applies. "[A]lthough the primary injury may have passed"—Herzog has offered transactional immunity to McCormack—there still exists "'a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *E.E.O.C. v. Fed. Exp. Corp.*, 558 F.3d 842, 847 (9th Cir. 2008) (quoting *In re Burrell*, 415 F.3d 994, 999 (9th Cir. 2005)). Herzog continues to maintain the constitutionality of § 18-606, and declaratory relief remains available and unaffected.

(c) Finally, as the district court determined, McCormack would also be eligible for the "capable of repetition, yet evading review" exception to the mootness doctrine. Like any other woman challenging a potentially applicable abortion law, McCormack may become pregnant again, and her term of pregnancy is of limited duration. Herzog counters that McCormack lacks standing to challenge § 18-606 on the basis of future pregnancies. Yet Herzog is conflating the

mootness of McCormack's claim with her standing to bring
the claim. As elaborated below, McCormack may not have
standing to challenge the provision on the basis of future
pregnancies, but that does not moot her current action. *See
Friends of the Earth*, 528 U.S. at 191 (explaining that a post-
complaint resolution will not moot an action, "despite the fact
that [the plaintiff] would have lacked initial standing had she
filed the complaint after the [resolution]").

Thus, the district court correctly held that McCormack's
claim is not moot.

3. *McCormack has standing based on a lingering risk of
prosecution under § 18-606.*

Prosecuting Attorney Herzog asserts that McCormack
lacks standing to challenge § 18-606 on the basis of future
pregnancies.

Article III standing requires that McCormack establish
(1) that she personally has suffered an "actual or imminent,
not conjectural or hypothetical" injury as a result of the
allegedly illegal conduct; (2) a causal link between her injury
and the challenged action; and (3) that the injury must likely
be "redressed by a favorable decision" of a federal court.
*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)
(internal quotation marks and citations omitted). "A plaintiff
who challenges a statute must demonstrate a realistic danger
of sustaining a direct injury as a result of the statute's
operation or enforcement." *Babbitt v. United Farm Workers
Nat'l Union*, 442 U.S. 289, 298 (1979) (citing *O'Shea v.
Littleton*, 414 U.S. 488, 494 (1974)).

In *McCormack I*, we held that McCormack does not have standing to challenge PUCPA "based on a possible future pregnancy" because "in McCormack's case there are too many 'possibilities that may not take place and all may not combine.'" 694 F.3d at 1025 (quoting *Roe v. Wade*, 410 U.S. 113, 128 (1973)). And McCormack conceded that *Roe* and other related cases have held that the possibility of future pregnancy "may be too speculative and conjectural for standing."[9]

Nevertheless, McCormack continues to have standing based on the ongoing risk of prosecution for the termination of her past pregnancy. The district court properly noted that "[a]t the outset of this litigation, McCormack had standing to challenge the constitutionality of section 18-606 in conjunction with both section 18-608(1) and section 18-608(2) . . . because she faced prosecution and continued to be threatened with prosecution." And McCormack presently has standing to challenge §§ 18-606 and 18-608 because, as discussed in section A.2 above, the Prosecuting Attorney's offer of immunity does not guarantee that the prosecution of McCormack would never recur. Because McCormack

---

[9] Indeed, "there are circumstances in which the prospect that a [party] will engage in (or resume) [its] conduct may be too speculative to support standing, but not too speculative to overcome mootness." *Friends of the Earth*, 528 U.S. at 190. Therefore, even if McCormack may not have standing to challenge § 18-606 on the basis of future pregnancies, that does not moot her initial claim that she asserted when she properly had standing. *Id.* ("Standing doctrine functions to ensure, among other things, that the scarce resources of the federal courts are devoted to disputes in which the parties have a concrete stake. In contrast, by the time mootness is an issue, the case has been brought and litigated, often . . . for years. To abandon the case at an advanced stage may prove more wasteful than frugal.").

currently has standing based on a lingering risk of prosecution under § 18-606, her injury is not conjectural or hypothetical.

Lastly, the risk of continued enforcement of § 18-606 against McCormack is still redressable by declaratory relief. Accordingly, McCormack has standing to challenge the enforcement of § 18-606 against her for her past alleged abortion.

## B. Dr. Hearn has standing to challenge §§ 18-505 and 18-608.

The district court properly found that Dr. Hearn, as an Idaho licensed physician intending to provide pre-viability medical abortions, has standing to challenge §§ 18-505 and 18-608. We review the district court's standing decision de novo. *Gospel Missions of America v. City of Los Angeles*, 328 F.3d 548, 553 (9th Cir. 2003). To determine whether a physician has third-party standing to assert the rights of patients in the abortion context, the panel must determine: (1) whether the physician alleges "injury in fact" to himself or herself; and (2) whether the physician is a proper proponent of the legal rights on which he or she bases the suit. *Singleton v. Wulff*, 428 U.S. 106, 112 (1976).

Herzog concedes that we have held that a physician possesses standing on his own behalf and on that of his patients to challenge the validity of another Idaho abortion statute. *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 917 (9th Cir. 2004) ("[P]hysicians and clinics performing abortions are routinely recognized as having standing to bring broad facial challenges to abortion statutes."). The Supreme Court has also repeatedly held that

a physician may "assert the rights of women patients as against governmental interference" in the abortion context. *Singleton*, 428 U.S. at 118 (recognizing that "there seems little loss in terms of effective advocacy from allowing [an assertion of a woman's right to an abortion] by a physician"); *see also Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 845 (1992) (allowing abortion providers to challenge a state statute on behalf of third-party women who seek abortion services); *Griswold v. Connecticut*, 381 U.S. 479, 481 (1965) (holding that physicians have standing to assert the constitutional rights of patients to whom they prescribed contraceptive devices).

Prosecuting Attorney Herzog attempts to distinguish Dr. Hearn from other physicians who have been recognized as having standing. Herzog asserts that Dr. Hearn cannot challenge the validity of §§ 18-505 and 18-608 because he has not established that he can provide abortions in a "medically appropriate manner." Herzog claims that Dr. Hearn seeks to provide access to abortifacients, *i.e.*, medication to induce abortions, under a regime that has negative health and potentially life-threatening consequences and a finding of standing cannot be "squarely adverse to the interests of the patient."

First, Dr. Hearn has stated his clear intention to "prescribe FDA approved medications to women in Bannock County, Idaho such as Plaintiff McCormack who . . . seek to medically terminate their pregnancies in violation of the restrictions contained in Idaho Code Title 18, Chapters 5 and 6 . . . prior to fetal viability." Furthermore, Dr. Hearn intends to perform medical abortions outside a clinical or hospital setting through the second trimester. We have recognized that a physician's statement of intent is sufficient to establish

standing, when the physician is at risk of criminal prosecution under the relevant statutes. *Wasden*, 376 F.3d at 916–17 ("by stat[ing] his clear intent[] to continue to perform abortions . . . [a physician] has alleged a sufficiently concrete and imminent injury—possible prosecution and imprisonment—to challenge the provisions that ban abortion providers from [providing medical abortions to women prior to fetal viability.]"). Further, Dr. Hearn need not even claim a "specific intent to *violate* the statute." *Id.* at 917 (noting that a plaintiff need only "reasonable fear a statute would be enforced against it *if* it engaged in certain conduct") (citation omitted).

Second, Dr. Hearn's intent to provide FDA-approved medication to women to terminate their pregnancies prior to fetal viability does not need to be supported by a demonstration of the "medical appropriateness" of his ability to provide medical abortions. Whether Dr. Hearn can provide medical abortions in "an appropriate clinical setting" is irrelevant to whether he, as an Idaho licensed physician, can effectively represent the constitutional right to terminate a pregnancy before viability. The Supreme Court has looked to the professional relationship between a physician and a patient, *Griswold*, 381 U.S. at 481, the economic harm on abortion providers, *Singleton*, 428 U.S. at 112–13, and a physician's "direct stake" in the abortion process, *Diamond v. Charles*, 476 U.S. 54, 67 (1986), when determining standing. But an inquiry into the "medical appropriateness" of an abortion provider's practice is not only unprecedented, but is also too ambiguous, and thus unwarranted.

Since 1997, Dr. Hearn has continuously been registered with the Federal Drug Enforcement Agency and the Idaho State Board of Pharmacy. And his ability to legally prescribe

FDA-approved abortion medication in Bannock County is sufficient to demonstrate an "actual and imminent" injury—the risk of criminal prosecution for prescribing abortion pills prior to viability.

Accordingly, the district court properly determined that Dr. Hearn has standing to assert his patients' rights in cases challenging abortion restrictions, and we will consider Dr. Hearn's claims.

**C. The statutes pose an undue burden on a woman's ability to obtain an abortion, and the criminal sanctions for abortion providers are unconstitutionally vague.**

A woman has a Fourteenth Amendment right to terminate a pre-viability pregnancy, "and to obtain it without undue interference from the State." *Casey*, 505 U.S. at 846. However, this right is not absolute, and the state may express its interest in potential life by regulating abortions, so long as the regulations do not pose an "undue burden" on a woman's ability to seek an abortion before the fetus attains viability. *Id.* at 874. Although the state may ensure that the woman's choice is informed, and protect the health and safety of a woman seeking an abortion, the state may not prohibit a woman from making the "ultimate decision" to undergo an abortion. *Id.* at 878–79.

1. *Standard of Review*

We review de novo a district court's grant of summary judgment. *Nunez v. City of San Diego*, 114 F.3d 935, 940 (9th Cir. 1997). "[A] facial challenge to an abortion statute will succeed where, in a large fraction of the cases in which

the statute is relevant, it will operate as a substantial obstacle to a woman's choice to undergo an abortion." *Wasden*, 376 F.3d at 921 (internal quotation marks, brackets, and citation omitted). And the "large fraction" is computed by focusing on "those upon whom a challenged law would have some actual effect, rather than all women . . . seeking an abortion." *Id.* There is also a heightened need for definiteness "when the ordinance imposes criminal penalties on individual behavior or implicates constitutionally protected rights." *Nunez*, 114 F.3d at 940.

2. *Section 18-505 is facially unconstitutional because it categorically bans some abortions before viability.*

Section 18-505 prohibits abortions of fetuses of twenty or more weeks postfertilization. The twenty-week ban applies regardless of whether the fetus has attained viability.

The Supreme Court reaffirmed in *Casey* that an undue burden exists if the purpose or effect of a provision of law places a substantial obstacle in the path of a woman seeking an abortion before the fetus obtains viability. *Casey*, 505 U.S. at 846. In *Planned Parenthood of Cent. Mo. v. Danforth*, 428 U.S. 52, 64 (1976), the Court further explained that "it is not the proper function of the legislature or the courts to place viability, which essentially is a medical concept, at a specific point in the gestation period." Because § 18-505 places an arbitrary time limit on when women can obtain abortions, the statute is unconstitutional. We also recently held unconstitutional an Arizona law banning abortions after the twenty week gestational age because the law operated as a ban on a woman's constitutional right a to pre-viability abortion. *Isaacson v. Horne*, 716 F.3d 1213, 1225–1227 (9th Cir. 2013).

Prosecuting Attorney Herzog concedes that "[n]o dispute exists that medical induction abortions can occur between the twentieth week of pregnancy and fetal viability." Yet Herzog attempts to reframe the issue as whether the statute imposes an undue burden on Dr. Hearn's proposed plan to provide medical abortions in the patient's home after the twentieth week of pregnancy. Although Dr. Hearn's proposed plan would be detrimentally affected by the enforcement of § 18-505, the broader effect of the statute is a categorical ban on *all* abortions between twenty weeks gestational age and viability. This is directly contrary to the Court's central holding in *Casey* that a woman has the right to "choose to have an abortion *before viability* and to obtain it without undue interference from the State." *Casey*, 505 U.S. at 846 (emphasis added).

Thus, the district court did not err in finding § 18-505 facially unconstitutional.

3. *Section 18-608(2) is facially unconstitutional because it requires hospitalizations for all second-trimester abortions.*

Section 18-608(2) requires that all second-trimester abortions occur in a hospital. If the licensed medical provider fails to abide by § 18-608(2), he or she will be subject to civil and criminal penalties, as outlined in §18-605.

The Supreme Court has twice invalidated requirements that physicians perform all second-trimester abortions in hospitals. *See Planned Parenthood Ass'n of Kansas City, Mo., Inc. v. Ashcroft*, 462 U.S. 476 (1983); *City of Akron v. Akron Center for Reproductive Health, Inc.*, 462 U.S. 416 (1983) (overturned on other grounds). "[S]uch a requirement

unreasonably infringes upon a woman's constitutional right to obtain an abortion." *Planned Parenthood Ass'n of Kansas City, Mo., Inc.*, 462 U.S. at 482 (internal quotation marks omitted).

Prosecuting Attorney Herzog attempts to distinguish the present case from this controlling Supreme Court precedent by arguing that both the absolute and percentage terms of second trimester abortions in Idaho are "quite small." Between 2007 and 2011, about 1.2 percent of abortions in Idaho were performed during or after the fourteenth week of pregnancy and only about 21.5 percent of those abortions were non-surgical. But Herzog draws the court's attention to irrelevant figures. The percentage of non-surgical second trimester abortions is certainly small, but for "a large fraction of the cases in which [the statute] is relevant," required hospitalization will operate as a substantial obstacle. *Casey*, 505 U.S. at 895.

Herzog also asserts that Dr. Hearn is not "competent professionally" to provide medical abortions outside of a hospital setting. However, we think that an inquiry into the "medical appropriateness" of Dr. Hearn's proposed prescriptions of abortion pills is not properly part of our analysis, especially given the vagueness of that phrase.

Therefore, the district court did not err in finding § 18-608(2) facially unconstitutional.

4. *Section 18-608(1) in conjunction with § 18-605 is unconstitutionally vague.*

Section 18-608 outlines where certain abortions are permitted. Specifically, §18-608(1) requires abortions during

the first trimester to take place in a hospital, physician's office, or clinic that is:

> *properly* staffed and equipped for the performance of such procedures and respecting which the responsible physician or physicians have made *satisfactory* arrangements with one or more acute care hospitals within reasonable proximity thereof providing for the prompt availability of hospital care as may be required due to complications or emergencies that might arise.

Idaho Code Ann. § 18-608(1) (emphasis added).

Section 18-605 establishes civil and criminal penalties for persons who perform abortions other than as permitted by the remainder of Title 18, Chapter 6 of the Idaho Code. In particular, § 18-605(3) states that the licensed or certified health care provider must "knowingly" violate the statute to be guilty of a felony.

Herzog contests the district court's determination that § 18-608(1) is unconstitutionally vague, arguing that: (1) whether a medical office is "properly staffed" and whether "satisfactory arrangements" with a hospital have been made "connote objectively determinable facts," and (2) the § 18-605 enforcement provisions require the alleged violation to be performed "knowingly." We are not persuaded.

"To avoid unconstitutional vagueness, an ordinance must (1) define the offense with sufficient definiteness that

ordinary people can understand what conduct is prohibited; and (2) establish standards to permit police to enforce the law in a non-arbitrary, non-discriminatory manner." *Nunez*, 114 F.3d at 940. If a statute subjects violators to criminal penalties, the need for clear definitions "is even more exacting." *Forbes v. Napolitano*, 236 F.3d 1009, 1011 (9th Cir. 2000). The Supreme Court has held that "a criminal statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute or is so indefinite that it encourages arbitrary and erratic arrests and convictions is void for vagueness." *Colautti v. Franklin*, 439 U.S. 379, 390 (1979) (internal quotation marks and citations omitted). "[W]here the uncertainty induced by the statute threatens to inhibit the exercise of constitutionally protected rights[,]" the law is even more likely to be found unconstitutionally vague. *Id.* at 391.

In *Gonzales v. Carhart*, 550 U.S. 124, 147–48 (2007), the Supreme Court considered whether the Partial-Birth Abortion Ban Act of 2003, 18 U.S.C. § 1531 (2000 ed., Supp. IV), was unconstitutionally vague. The Act defines the unlawful abortion in explicit terms and includes very specific "anatomical landmarks" to put abortion providers on notice as to what type of abortions are prohibited. *Gonzales*, 550 U.S. at 147–48. The Court found that the Act sets forth "relatively clear guidelines as to prohibited conduct and provides objective criteria to evaluate whether a doctor has performed a prohibited procedure[,] . . . [u]nlike the statutory language in *Stenberg [v. Carhart*, 530 U.S. 914 (2000)] that prohibited the delivery of a substantial portion of the fetus." *Id.* at 149 (internal quotation marks omitted).

Unlike the terms in the Act at issue in *Gonzales*, the terms "properly" and "satisfactory," as used in § 18-608(1), lack precise definition, and "subject[] physicians to sanctions based not on their own objective behavior, but on the subjective viewpoints of others." *Tucson Woman's Clinic v. Eden*, 379 F.3d 531, 555 (9th Cir. 2004) (internal quotation marks omitted). Neither term is defined in the statute, nor are they terms of art with specific definitions in the medical context.

We have found a statute unconstitutionally vague that required that patients "be treated with consideration, respect, and full recognition of the patient's dignity and individuality" because "understandings of what 'consideration,' 'respect,' 'dignity,' and 'individuality' mean are widely variable, . . . [making the statute too] vague and subjective for providers to know how they should behave in order to comply, as well as too vague to limit arbitrary enforcement." *Id.* at 554–55 (internal quotation marks omitted). Here, the terms "properly" and "satisfactory" are similarly subjective and open to multiple interpretations.

The district court noted that the dictionary definitions of the terms also are unhelpful in curing the statute's vagueness. "Properly" means "suitably, fitly, rightly, correctly." WEBSTER'S THIRD INT'L DICTIONARY 1818 (3d ed. 1976)). "Satisfactory" means "sufficient to meet a condition or obligation." *Id.* at 2017. Instead of providing clarity, the definitions raise the same questions as the terms themselves: proper, satisfactory, fit, right, or sufficient according to whom or what standard?

Unlike the specific "anatomical landmarks" in the statute at issue in *Gonzales*, § 18-608(1) fails to provide a specific

standard to measure or determine what is "proper" or "satisfactory."  The district court correctly recognized the "trap" of these imprecise terms: they "could well impose criminal liability on activity that offends some people's sense of what is 'properly staffed and equipped' or what arrangements are 'satisfactory,' but may appear to others as more than adequate."

Moreover, the scienter requirement in § 18-605(3) (a medical provider must "knowingly violate[] the provision[]" to be guilty of a felony), does not make the widely variable definitions of "properly" and "satisfactory" any less vague. Because the enforcement of the statute relies on "wholly subjective judgments without statutory definitions," a physician could argue that he believed he complied with § 18-608(1).  *United States v. Williams*, 553 U.S. 285, 306 (2008). Additionally, "this lack of clarity may operate to inhibit [a physician's provision of legal abortion services] because individuals will not know whether the ordinance allows their conduct, and may choose not to exercise their rights for fear of being criminally punished."  *Hunt v. City of Los Angeles*, 638 F.3d 703, 713 (9th Cir. 2011).

Herzog also attempts to import the "reasonable physician" standard from Idaho's medical practice liability statute (which is not being challenged in this case) to argue that a standard of objective reasonableness for physicians generally applies to all instances of civil liability—including § 18-608. However, violators of § 18-608 are not just subject to civil penalties, but also to criminal prosecution under § 18-605. And whereas the legislature definitively outlined a reasonable physician standard in the medical malpractice statute, it failed to do so in the abortion statute.  Without clear language that gives physicians adequate notice of how to comply with the

statute, § 18-608(1), as interpreted with § 18-605, is unconstitutionally vague. *See Colautti*, 439 U.S. at 391 (finding a statute void for vagueness "where the uncertainty induced by the statute threatens to inhibit the exercise of constitutionally protected rights," even where the law could have some constitutional applications).

Lastly, Herzog argues that if our court finds § 18-608(1) impermissibly vague, we should sever the unconstitutional words from the statute pursuant to § 18-616, the law's severability clause. The Idaho Supreme Court has held that "when the unconstitutional portion of a statute is not integral or indispensable, it will recognize and give effect to a severability clause." *Simpson v. Cenarrusa*, 944 P.2d 1372, 1377 (Idaho 1997).

Assuming the terms "properly" and "satisfactory" are severable, striking these words from the statute would not remedy the constitutional infirmities of the statute. Removing the ambiguous terms would result in the following language:

> Abortions permitted by this subsection shall only be lawful if and when performed in a hospital or in a physician's regular office or a clinic which office or clinic is _____ staffed and equipped for the performance of such procedures and respecting which the responsible physician or physicians have made _____ arrangements with one or more acute care hospitals within reasonable proximity thereof providing for the prompt availability of hospital care as may be required due to complications or emergencies that might arise.

The appropriate amount of staff and equipment for an abortion remains unclear, as there may be differing opinions about what is sufficient. It also is unclear what types of arrangements must be made with acute care hospitals to comply with the statute. "Given the potential for harassment of abortion providers, it is particularly important that enforcement of any unconstitutionally vague provisions of the scheme be enjoined." *Tucson Woman's Clinic*, 379 F.3d at 554. Thus, the lack of definitive standards for performing legal first trimester abortions causes § 18-608(1) to remain unconstitutionally vague.

## CONCLUSION

For the foregoing reasons, we affirm the district court's judgment. McCormack's challenge to § 18-606 is not moot because her claims fall under three exceptions to the mootness doctrine: (a) "voluntary cessation," (b) "collateral legal consequences," and (c) "capable of repetition, yet evading review." McCormack has standing based on the lingering risk of prosecution under § 18-606. Dr. Hearn has standing based on his intention to provide medical abortions through the second trimester outside a clinical or hospital setting and based on his possible prosecution under § 18-505 and § 18-608. Section 18-505 is facially unconstitutional because it categorically bans some abortions before viability. Section 18-608(2) is facially unconstitutional because it places an undue burden on a woman's ability to obtain an abortion by requiring hospitalizations for all second-trimester abortions. Section 18-608(1) in conjunction with § 18-605 is unconstitutionally vague.

**AFFIRMED.**