**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

MAY 20 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| FRIENDS OF RAPID RIVER; FRIENDS OF THE CLEARWATER, <br><br> Plaintiffs-Appellants, <br><br> v. <br><br> CHERYL F. PROBERT, Supervisor, Nez Perce-Clearwater National Forest; VICTORIA CHRISTIANSEN, Chief of the U.S. Forest Service, an agency of the U.S. Dept. of Agriculture, <br><br> Defendants-Appellees. | No. 19-36063 <br><br> D.C. No. 3:18-cv-00465-DCN <br><br> MEMORANDUM[*] |

Appeal from the United States District Court
for the District of Idaho
David C. Nye, Chief District Judge, Presiding

Submitted May 11, 2020[**]
San Francisco, California

Before: THOMAS, Chief Judge, and FRIEDLAND and BENNETT, Circuit Judges.

Plaintiffs-Appellants Friends of Rapid River and Friends of the Clearwater

_____

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

("Plaintiffs"), environmental groups whose members live or recreate in Idaho forests, filed this action against Defendants-Appellants Cheryl Probert and Victoria Christensen (the "Forest Service") challenging the Forest Service's decision to authorize the Windy-Shingle Project in Idaho's Nez Perce-Clearwater National Forests pursuant to the Healthy Forests Restoration Act ("HFRA"), 16 U.S.C. §§ 6501-6591, which allows certain projects to proceed without following the procedures in the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.* Plaintiffs' complaint sought a declaratory judgment that the Forest Service's decision was arbitrary, capricious, and otherwise not in accordance with law and an injunction enjoining the Forest Service from implementing the Windy-Shingle Project until it had complied with NEPA. As relevant here, Plaintiffs contended that the Forest Service's decision to authorize the Windy-Shingle Project (1) violated the National Forest Management Act ("NFMA"), 16 U.S.C. §§ 1600-1614, and the HFRA by failing to comply with the governing Forest Plan; and (2) violated the HFRA by including an authorization for the expansion of the McClinery gravel pit to supply road aggregate for roadwork related to the Windy-Shingle Project, as well as for future aggregate placement projects and maintenance needs.

The district court denied Plaintiffs' cross-motion for summary judgment and granted the Forest Service's cross-motion as to all of Plaintiffs' claims and entered

2

final judgment. Plaintiffs timely appealed. Following Plaintiffs' appeal, the Forest Service withdrew authorization of the gravel pit expansion, representing that the roadwork for the Windy-Shingle Project that had needed aggregate was nearly complete and that it was "now clear" that the pit expansion was not needed for the Windy-Shingle Project.[1] For the reasons that follow, we dismiss as moot Plaintiffs' challenge with respect to the McClinery gravel pit. And, reviewing the administrative record de novo, *see All. for the Wild Rockies v. U.S. Forest Serv.*, 907 F.3d 1105, 1112 (9th Cir. 2018), we affirm the district court's grant of summary judgment with respect to Plaintiffs' remaining claims.

1.    In light of the Forest Service's decision to withdraw its authorization of the expansion of the McClinery gravel pit before that expansion was commenced, Plaintiffs' challenge with respect to the expansion is moot. The issues presented by that challenge are "no longer 'live'" and "the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (per curiam)). Nor does the voluntary cessation exception to the mootness doctrine apply. We can say "with assurance that 'there is no reasonable expectation . . .' that the alleged violation will recur." *Fikre v. FBI*, 904 F.3d 1033, 1037 (9th Cir. 2018)

---

[1] We grant the Forest Service's unopposed motion for judicial notice of the revision document communicating that decision. *See* Dkt. No. 20-1.

3

(quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)). By explaining, in what we presume is good faith, *see id.*, that the roadwork that the pit expansion had been designed to facilitate was nearly complete and that no pit aggregate was necessary for that roadwork, the Forest Service has "demonstrate[d] that the change in its behavior is 'entrenched' or 'permanent,'" *id.* (quoting *McCormack v. Herzog*, 788 F.3d 1017, 1025 (9th Cir. 2015)). Although the initial pit expansion authorization referred to the possibility of future aggregate needs, the Forest Service's potential interest in a *future* expansion of the pit does not raise any likelihood that it will do so as part of *this* project. The Forest Service has accordingly met its "heavy burden" of persuading us "that the challenged conduct cannot reasonably be expected to start up again." *Id.* (quoting *Adarand Constructors, Inc. v. Slater*, 528 U.S. 216, 222 (2000)), and Plaintiffs' challenge to the pit authorization is moot. We dismiss their appeal with respect to this issue.

2. Plaintiffs' arguments contesting the Forest Service's decision to authorize the Windy-Shingle Project all fail.

First, the Forest Service did not violate the Forest Plan, and thus did not violate the NFMA or HFRA, *see All. for the Wild Rockies*, 907 F.3d at 1109-10; 16 U.S.C. § 6591b(e), in relying on legacy stand exams and photographs in lieu of site visits in order to verify old growth. The relevant Forest Plan requirements either support the Forest Service's view or are at least "genuinely ambiguous," and the

4

Forest Service's interpretation of them is reasonable and contextually appropriate. *See Kisor v. Wilkie*, 139 S. Ct. 2400, 2414-18 (2019).

Nor was it arbitrary or capricious for the Forest Service to employ the old-growth identification and verification methods it did, *see All. for the Wild Rockies*, 907 F.3d at 1112, on the grounds that the data on which the Forest Service relied was "too stale to carry the weight assigned to it," *N. Plains Res. Council v. Surface Transp. Bd.*, 668 F.3d 1067, 1086 (9th Cir. 2011); *see also Lands Council v. Powell*, 395 F.3d 1019, 1031 (9th Cir. 2005), because there is little reason to think that a forest stand that met old-growth criteria in the past and that has not been subjected to intervening environmental disturbances no longer does so.

Second, the Forest Service did not violate the Forest Plan, and thus did not violate the NFMA or HFRA, in failing to priority-rank old-growth stands within the project area, because the plain text of the Forest Plan does not require updating existing old-growth stand designations to account for changes in their relative priority.

Third, the Forest Service did not violate the Forest Plan, and thus did not violate the NFMA or HFRA, in shifting the location of an area designated to be managed for old-growth habitat and authorizing logging in some parts of the forest within the former boundaries. The Forest Service is entitled to deference for its interpretation of the Forest Plan as permitting shifts of designated management

5

areas from one part of the forest to a nearby part that the Forest Service concludes better meets the Forest Plan's management objectives. It is "genuinely ambiguous," *Kisor*, 139 S. Ct. at 2414, whether the "flexible" nature of management area boundaries permits the Forest Service to conduct such shifts, because there are portions of the text and regulatory framework of the Forest Plan that favor each party's interpretation. And the Forest Service's interpretation of the ambiguous language in the Forest Plan as allowing management areas to be shifted when doing so would meet the designated management objectives of the Forest Plan is reasonable.[2] *See id.* at 2415.[3] The character and context of the Forest Service's interpretation entitles it to controlling weight because, among other things, the interpretation implicated the Forest Service's substantive expertise

---

[2] Among other things, Plaintiffs argue that their interpretation of the Forest Plan—that management area designations may be shifted in a manner that affects the Forest Plan standards applicable to a given area only through the Forest Plan amendment process—better comports with the NFMA's record-keeping and map-maintaining requirements. Plaintiffs did not, however, raise this issue in the district court, and in any event Plaintiffs have not shown that the public would be unable to learn about the shifting of designated management areas from one location to another without the use of the Forest Plan amendment process. To the contrary, the public availability of the Windy-Shingle Project file would seem to address their concern.

[3] To the extent Plaintiffs also argue that, even if the Forest Plan permits shifting management area boundaries, the Forest Service violated the Forest Plan by doing so in this case because the Forest Service did not adequately verify whether the new location satisfied old-growth management criteria, that argument fails for the same reasons given above: the Forest Plan did not require more verification than the Forest Service conducted.

and was not articulated as a post hoc rationalization.  *Id.* at 2416-18.

Nor did the Forest Service act arbitrarily or capriciously in shifting the management area.  *Alliance for the Wild Rockies*, 907 F.3d 1105, does not require a contrary conclusion.  Unlike in that case, here, the Forest Service did not replace a more stringent management standard with a less stringent one, *see id.* at 1112-13, but rather shifted the more stringent standard to a more appropriate area.  Nor did the Forest Service remove a management standard insofar as it simply shifted that standard to a nearby area.

**DISMISSED in part and AFFIRMED in part.**