FILED

**NOT FOR PUBLICATION**

SEP 17 2020

UNITED STATES COURT OF APPEALS

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| JONEE FONSECA, an individual parent and guardian of I.S., a minor; LIFE LEGAL DEFENSE FOUNDATION, <br><br> Plaintiffs-Appellants, <br><br> v. <br><br> KAREN SMITH, M.D. in her official capacity as Director of the California Department of Public Health; DOES, 2 through 10, inclusive, <br><br> Defendants-Appellees. | No. 17-17153 <br><br> D.C. No. 2:16-cv-00889-KJM-EFB <br><br> MEMORANDUM[*] |

Appeal from the United States District Court
for the Eastern District of California
Kimberly J. Mueller, Chief District Judge, Presiding

Argued and Submitted January 14, 2019
San Francisco, California

Before: WALLACE, CLIFTON, and FRIEDLAND, Circuit Judges.

Plaintiffs-Appellants Jonee Fonseca and Life Legal Defense Fund (LLDF)

appeal the district court's dismissal of the Third Amended Complaint (TAC)

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

against Defendant-Appellee Dr. Karen Smith, sued in her official capacity as Director of California's Department of Public Health and Safety,[1] for lack of standing and thus jurisdiction under Rule 12(b)(1), Federal Rules of Civil Procedure.  Reviewing de novo, *Am. Diabetes Ass'n v. United States Dep't of the Army*, 938 F.3d 1147, 1151 (9th Cir. 2019), we affirm.

We assess Plaintiffs' standing relative to the relief requested in the TAC and therefore consider the facts as they existed at that point.  *See Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 655 (9th Cir. 2002) (assessing standing relative to the first amended complaint).  The TAC requests an injunction changing the date of death listed on Fonseca's son's death certificate and a declaration that California's Uniform Determination of Death Act (CUDDA) is unconstitutional on its face and as applied.

1.  Fonseca supported her claim for injunctive relief by alleging in the TAC that the "continued existence of government documents that certify that Israel died on April 14 . . . . results in the loss of medical insurance coverage and government benefits to the child and the family."  At oral argument before this court, however, Fonseca's counsel admitted that he was unsure such relief would increase the

---

[1] We understand that Dr. Smith subsequently left that position.  Her successor is automatically substituted as the current defendant.  Fed. R. App. P. 43(c)(2).

likelihood of recovering any lost benefits. *See* Oral Argument at 12:00-13:35 & 16:40-17:08. Given the opportunity to clarify the issue in supplemental briefing, counsel expressed "no position" regarding the ability to redress this alleged injury.[2] That did not meet Fonseca's burden to show redressability. *Renee v. Duncan*, 623 F.3d 787, 798 (9th Cir. 2010).

Counsel asserts that Fonseca's interest in the controversy is "dignity," Oral Argument at 13:15-40, and argues that the "discrepancy" on the death certificate "reflects the difference between whether [Israel's] life ended lawfully or unlawfully, . . . who is ultimately responsible for that death, and whether the family was justified in its considerable efforts to transport Israel out of the country for further treatment." Emotional vindication, to the extent it is sought, is not itself a basis for jurisdiction. *Diamond v. Charles*, 476 U.S. 54, 66 (1986) ("Article III requires more than a desire to vindicate value interests."); *Ashcroft v. Mattis*, 431 U.S. 171 (1977) ("[A]ppellee's primary claim of a present interest in the

---

[2] Fonseca's counsel argued that she should not be required to establish that this legal action could redress her financial injury, as that would imply that she is seeking monetary damages against the State, which the Eleventh Amendment would appear to preclude. That response misses the point. The redressability requirement could be satisfied, for example, if amending the death certificate would permit a claim against another party, an insurance carrier or possibly even the State, as alleged in the TAC, even if that claim might have to be pursued in state court.

controversy is that he will obtain emotional satisfaction from a ruling that his son's death was wrongful.  Emotional involvement is [sic] a lawsuit is not enough to meet the case-or-controversy requirement." (citation and footnote omitted)). Fonseca does not have standing to pursue the asserted claim.

2.  LLDF seeks declaratory relief that CUDDA is unconstitutional and claims to have both representative and direct organizational standing.  Because Fonseca does not have standing to sue in her own right, and LLDF has not alleged that any other "members" have standing, LLDF does not have representative standing.  *See Rodriguez v. City of San Jose*, 930 F.3d 1123, 1134 (9th Cir. 2019), *petition for cert. docketed*, No. 19-1057 (U.S. Feb. 25, 2020).

For direct standing, an organization must satisfy the traditional Article III requirements of an injury in fact, causation, and redressability.  *E. Bay Sanctuary Covenant v. Trump (E. Bay II)*, 932 F.3d 742, 765 (9th Cir. 2018).  LLDF does not have direct standing because it does not adequately plead causation.[3]

LLDF's theory of causation depends on two key inferences: that CUDDA is what causes doctors to declare death upon brain death, and that a declaration of death is what causes the termination of life support.  Both these inferences,

---

[3] Because LLDF's claim of standing fails for lack of causation, we need not address whether it satisfies the injury in fact requirement of Article III.

4

however, are speculative. CUDDA does not require a declaration of death; it merely instructs that one definition of death is brain death. Indeed, CUDDA itself mandates that "[a] determination of death must be made in accordance with accepted medical standards," Cal. Health & Safety Code § 7180(a). And the accepted medical standard that brain death constitutes death well pre-dated CUDDA: California has defined brain death as "death" since 1974, *see Barber v. Superior Court*, 147 Cal. App. 3d 1006, 1013 n.1 (Cal. App. 1983), eight years before CUDDA was adopted in 1982. Thus, doctors may make exactly the same medical decisions regarding the definition of death without CUDDA. LLDF has alleged no facts indicating that, without CUDDA, doctors in California would be less likely to declare death after determining brain death, and that LLDF could therefore devote fewer resources to fighting such declarations.

Further, LLDF has alleged no facts to support its contention that, if CUDDA were declared unlawful, medical professionals would on fewer occasions decide to withdraw life support after determining brain death. Although it is plausible that CUDDA's definition of "death" plays a role in such a choice, even without CUDDA, "other provisions of California law that are not before this court" would allow that decision to continue. *Fonseca v. Kaiser Permanente Med. Ctr. Roseville*, 222 F. Supp. 3d 850, 875 (E.D. Cal. 2016); *see, e.g.*, Cal. Prob. Code

5

§ 4735 ("A health care provider or health care institution may decline to comply with an individual health care instruction or health care decision that requires medically ineffective health care or health care contrary to generally accepted health care standards[.]").

In short, both steps of the causal chain LLDF proposes turn on "*independent* actions of third parties that break the causal link between" CUDDA and LLDF's injury. *Ass'n of Pub. Agency Customers v. Bonneville Power Admin.*, 733 F.3d 939, 953 (9th Cir. 2013) (emphasis in original). These unknown independent acts make the resulting causal chain not plausible, but rather "hypothetical or tenuous." *Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 849 (9th Cir. 2002). Thus, we cannot infer based on the TAC that the injury LLDF asserts – its diversion of resources to challenge medical decisions that define death as brain death and the removal of individuals from life support based on that definition – is caused by CUDDA and not the intervening acts of independent third parties.

In sum, neither plaintiff has alleged sufficient facts to establish standing. We affirm the district court's judgment of dismissal.

**AFFIRMED.**[4]

---

[4] The Request for Judicial Notice, filed by the State on April 11, 2018, is denied as moot. The substance of the request is not relevant to the basis of our resolution of this case.