**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

DEC 19 2022

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

LYRALISA LAVENA STEVENS,

Plaintiff-Appellant,

v.

JEFFREY A. BEARD; et al.,

Defendants-Appellees.

No. 19-15838

D.C. No.
1:17-cv-01002-AWI-SAB

MEMORANDUM[*]

Appeal from the United States District Court
for the Eastern District of California
Anthony W. Ishii, District Judge, Presiding

Argued and Submitted December 9, 2022
San Francisco, California

Before: GRABER, GOULD, and WATFORD, Circuit Judges.

Lyralisa Stevens is a transgender prisoner who suffers from gender

dysphoria. The California Department of Corrections and Rehabilitation (CDCR)

has treated her condition with hormone therapy but, until 2019, had refused her

requests for gender-affirming surgery. After the CDCR denied her request for

gender-affirming surgery in 2016, Stevens brought this 42 U.S.C. § 1983 action

---

[*] This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

alleging that prison officials' deliberate indifference to her serious medical needs violates the Eighth Amendment.  The district court granted the prison officials' motion to dismiss based on claim preclusion and failure to state a claim.  We reverse.

**1.**  In 2011, California state courts rejected Stevens's habeas petition and held that she was not entitled to gender-affirming surgery under the Eighth Amendment.  Under the Full Faith and Credit statute, 28 U.S.C. § 1738, we give this decision the same preclusive effect that it would receive under California law. *See Gonzales v. Cal. Dep't of Corr.*, 739 F.3d 1226, 1230 (9th Cir. 2014). California's claim preclusion doctrine requires that the later lawsuit involve (1) "the same 'cause of action' as the first [suit]," (2) "a final judgment on the merits in the first lawsuit," and (3) the same parties or parties in privity.  *San Diego Police Officers' Ass'n v. San Diego City Emps.' Ret. Sys.*, 568 F.3d 725, 734 (9th Cir. 2009).  California employs a "primary rights" theory to determine whether the cause of action is the same.  When the earlier and later suits involve "the same injury to the plaintiff and the same wrong by the defendant," the same cause of action is present.  *Brodheim v. Cry*, 584 F.3d 1262, 1268 (9th Cir. 2009) (quoting *Eichman v. Fotomat Corp.*, 197 Cal. Rptr. 612, 614 (Ct. App. 1983)).  "What is critical to the analysis 'is the harm suffered; that the same facts are involved in both suits is not conclusive.'"  *San Diego*, 568 F.3d at 734 (quoting *Agarwal v.*

*Johnson*, 603 P.2d 58, 72 (Cal. 1979)). Applying this approach, the district court determined that the California habeas decision precludes the current action because "both claims appear to involve the same harm of not receiving [gender-affirming surgery]." But the state-court decision in 2011 did not forever foreclose the possibility that the CDCR might be required to provide Stevens with gender-affirming surgery in the future.

California law is clear that claim preclusion "extends only to the facts and conditions as they existed at the time the judgment was rendered." *Lord v. Garland*, 168 P.2d 5, 11 (Cal. 1946). It does not "prevent a re-examination of the same question between the same parties where, in the interval between the first and second actions, the facts have materially changed or new facts have occurred which may have altered the legal rights or relations of the litigants." *In re Fain*, 188 Cal. Rptr. 653, 657 (Ct. App. 1983) (quoting *Hurd v. Albert*, 3 P.2d 545, 549 (Cal. 1931)).

In this case, Stevens alleges that in 2013—two years after the California habeas decision—she was diagnosed with a pituitary adenoma and chronic gliosis, new injuries that she claims are the result of her continued hormone therapy. Stevens contends that these new conditions alter the Eighth Amendment analysis in two ways. First, she alleges that these new side effects caused prison officials to reduce her estrogen intake, exacerbating her gender dysphoria. Second, she claims

that receiving gender-affirming surgery would allow her to treat her gender dysphoria with a lower estrogen intake, reducing the risk that these side effects will recur.

The prison officials argue that the California courts were aware of the risks of these side effects when they denied Stevens's prior habeas petition and therefore insist that circumstances have not changed in a meaningful way. We disagree. The facts that once-hypothetical risks have now materialized and that Stevens's medical condition has worsened as a result are significant developments. Stevens has suffered a new injury—her worsened medical condition—and a new wrong— CDCR's denial of gender-affirming surgery in 2016. Thus, this is a new cause of action. The 2011 California decision does not preclude Stevens from challenging the prison's 2016 denial of gender-affirming surgery in the face of this new medical record.

**2.** Stevens has plausibly asserted an Eighth Amendment claim by alleging "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). We have held that gender dysphoria can be a serious medical need, *see Edmo v. Corizon, Inc.*, 935 F.3d 757, 785 (9th Cir. 2019) (per curiam), and the district court did not suggest otherwise. It instead concluded that Stevens failed to allege that the prison officials were deliberately indifferent to her serious medical needs because two medical committees at the prison determined that hormone

therapy adequately treated her gender dysphoria. Although Stevens had alleged that the physicians who had evaluated her in 2010 would disagree with that assessment, the district court reasoned that a difference of medical opinion does not constitute deliberate indifference.

This analysis prematurely terminated the litigation. While showing a difference of medical opinion is not sufficient to state an Eighth Amendment violation, the existence of conflicting assessments does not necessarily defeat a claim of deliberate indifference. "[T]hat is true only if the dueling opinions are medically acceptable under the circumstances." *Edmo*, 935 F.3d at 786. Whether an opinion is medically acceptable under the circumstances is a fact-intensive question that requires analysis of the physicians' credentials, the bases for their opinions, and the medical standards in the field. *See id.* 786–87. At this stage in the litigation, we do not know whether any member of the prison's medical committees had experience in treating gender dysphoria, and their decisions denying Stevens's request for gender-affirming surgery are entirely devoid of reasons. All we know is that, according to Stevens's allegations, the committees' decisions are contrary to the "WPATH Standards of Care," which represent "the consensus of the medical and mental health communities regarding the appropriate treatment for transgender and gender dysphoric individuals." *Id.* at 769.

On this record, it would be improper to assume the reasonableness of the committees' assessment. Stevens instead should be permitted to conduct discovery so that she can attempt to prove her claim that the committees' decisions were "medically unacceptable under the circumstances" and that the defendants acted "in conscious disregard of an excessive risk to [her] health." *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016) (quoting *Snow v. McDaniel*, 681 F.3d 978, 988 (9th Cir. 2012)).

**3.** The prison officials argue that, regardless of the analysis above, we should dismiss this action through a two-step process. First, they contend that we must dismiss as moot Stevens's request for injunctive relief because the CDCR approved Stevens for gender-affirming surgery in 2019. Second, they urge us to dismiss her remaining request for damages based on qualified immunity. We hold that Stevens's claim for injunctive relief is not moot and decline to resolve the qualified immunity issue in the first instance.

Regarding mootness, a defendant's voluntary cessation does not moot a case unless (1) "it can be said with assurance that there is no reasonable expectation that the alleged violation will recur," and (2) "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Fikre v. FBI*, 904 F.3d 1033, 1037 (9th Cir. 2018) (cleaned up). The latter condition is not satisfied here. Even though the CDCR approved her for gender-affirming surgery more

than three years ago, Stevens still has not received that surgery and continues to suffer hardships resulting from the alleged wrongful denial in 2016. In the face of this prolonged delay, the district court has the authority to grant effective relief by ensuring that Stevens promptly obtains the treatment that she contends (and that the prison now recognizes) is medically necessary. *See Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 862 (9th Cir. 2017).

The prison officials insist that they are proceeding as quickly as possible and that the long delay is due to an outside surgeon's lack of availability, not their own foot-dragging. This uncorroborated assertion is insufficient to meet the defendants' "heavy burden of establishing that there remains no effective relief a court can provide." *Id.* If the district court determines on remand that preparation for the surgery is proceeding at an appropriate pace and that the prison officials are operating in good faith, it can stay proceedings. But the case is not moot and the federal courts retain jurisdiction over Stevens's claim for injunctive relief so long as she has not received the surgery.[1]

---

[1] Defendants in this case include the CDCR Secretary and Undersecretary, as well as members of the medical committees that denied Stevens's surgery request in 2016. It is possible that the injunctive relief claim is moot as it relates to the committee members because those defendants decide only whether a surgery is necessary and exercise no authority over its scheduling or administration. Because the parties did not adequately brief this argument before us, the district court on remand will be better positioned to make this determination.

As to Stevens's claim for damages, we decline to address the issue of qualified immunity in the first instance. *See Am. President Lines, Ltd. v. Int'l Longshore & Warehouse Union*, 721 F.3d 1147, 1157 (9th Cir. 2013). The prison officials remain free to raise that issue before the district court on remand.

**REVERSED and REMANDED.**